CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

April 21,  2026

LAURA A. AUSTIN, CLERK
BY: /s/ M.  Poff
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **KARSTEN O. ALLEN,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:26cv183** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **SALLY GOOD, et al.,** | ) | **By: Robert S. Ballou** |
| **Defendants.** | ) | **United States District Judge** |

Plaintiff Karsten O. Allen, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983, alleging that the defendants, by housing him at Wallen's Ridge State Prison with Bloods gang members, are deliberately indifferent to the risk of serious harm in which they are placing him.  He further alleged that defendant Good was deliberately keeping him at Wallen's Ridge in retaliation for prior litigation he filed against her.  Simultaneously with this suit, Allen filed a motion for an *ex parte* Temporary Restraining Order seeking to prevent defendants, Wallen's Ridge, and the Department of Corrections from housing him with gang-affiliated inmates or inmates classified as security threat group members until his transfer out of Wallen's Ridge. Allen also filed a motion for a preliminary injunction to order his transfer to another VDOC facility.  Court records indicate that Allen has had at least three prior actions dismissed as frivolous or for failure to state a claim upon which relief may be granted.[1]  Nor has Allen paid the filing fee in this matter.  Therefore, under 28 U.S.C. § 1915(g), the three strikes provision of the Prison Litigation Reform Act, Allen may not proceed with this action without prepaying the entire filing fee at the time of filing or showing that he is "under imminent danger

---

[1] *See, e.g., Allen v. Sater*, No. 7:21cv00230 (W.D. Va. July 18, 2022), *aff'd*, No. 22-6930 (4th Cir. Apr. 24, 2023); *Allen v. Coleman*, No. 7:21cv00241 (W.D. Va. March 5, 2022), *aff'd*, No. 22-6469 (4th Cir. Nov. 22, 2022); *Allen v. Fields,* No. 7:21cv00244 (W.D. Va. March 25, 2022), *aff'd*, No. 22-6473 (4th Cir. Jan. 20, 2023).

of serious physical injury." *Id.* Allen has failed to allege facts showing that he is in such imminent danger.

**Basis of Complaint and Motions for Injunctive Relief**

Allen's Complaint alleges that he was severely assaulted on September 26, 2023, by several inmates while he was housed at Sussex I State Prison. He alleges, without any support, that he learned "on his own" that the assailants were gang members, ordered by other gang members to commit the assault.[2] In April 2024, Allen was transferred to Wallen's Ridge State Prison, and upon his arrival, saw two inmates that he recognized as members of the Bloods, associated with the inmates who had assaulted him at Sussex. He heard one of them say, "that's the [expletive] the police paid us to pop on." Compl. at ¶ 11 (brackets in original). Allen's Complaint then explains that "police" is a reference to VDOC staff and "pop on" means assault. He alleges that he had been housed at Wallens Ridge in 2023 before he went to Sussex and that the Wallens Ridge staff, including Unit Manager Santos (who is not a party to this suit), had paid Bloods members to attack him in retaliation for lawsuits against Santos. Before the assault could occur, Allen and one of the "hired" gang members were transferred to Sussex I.

Allen was placed in restrictive housing upon his return to Wallens Ridge is customary for new arrivals. Before leaving the RHU, Allen contacted defendant Church, the Wallen's Ridge officer in charge of classification and housing assignments. Allen explained the incident in 2023 at Sussex and asked that he not be housed with any gang members, especially Bloods. Allen acknowledged in the Complaint that he has been classified by VDOC as a Blood member, but he

---

[2] That Wallens Ridge gang members had ordered an assault on him is not the version Allen described in his 2024 lawsuit arising from the assault. Rather, he claimed that he was robbed by two gang members seeking funds to support their drug habits when he came back from the commissary. His cellmate, a member of the same gang as the robbers, warned him not to report the assault or he and his gang members would kill Allen. Allen alleged in that suit that the robbery was the result of severe understaffing at Sussex I, resulting in more drugs getting into the prison, gang members being able to wander freely through the institution, and reduced security check rounds by correctional officers. *See Allen v. McCoy*, No. 1:24cv00490, Dkt. Nos. 1 and 9-1 (E.D. Va.).

emphatically denied that association and that he has repeatedly tried to get that classification removed for years, without success. Defendant Church told Allen that he would not determine his own housing and that he would be placed wherever bed space was available.

At first, Allen was assigned to a cell alone when he joined general population. A few weeks later, another inmate—a documented Bloods gang member—was added to his cell. For a time, there were no problems. Later, a new arrival came to the cell block. The new arrival told other inmates that he had been in the pod with Nixon (one of the assailants who attacked Allen at Sussex), and Nixon had said Allen was a snitch. A group of inmates armed themselves with shanks and threatened to attack Allen again, but other inmates averted the attack. Allen was immediately moved and housed alone again, until another gang member was assigned to his cell.

Allen stated that he repeatedly wrote to Ms. Church and to Mr. Duke, asking that he not be housed with gang members, and trying to get the Bloods classification removed from his record. His requests were not heeded. He was transferred back and forth between Wallen's Ridge and Sussex I several more times between 2024 and 2026. While at Sussex in 2025, Allen wrote twice to defendant Good, the VDOC Central Classifications Service Manager, asking that he not be housed at Wallen's Ridge, where Nixon was then housed, and that he not be housed near any of the inmates involved in the 2023 and 2024 incidents. She never responded to his requests, but a "keep separate" order was written stating that Allen and Nixon needed to be kept separate.

On January 5, 2026, Allen alleged he was transferred to Wallen's Ridge again. By this time, his security level had fallen to 4, and he was supposed to go to a different prison. Upon his arrival, staff, counselors, and the Chief of Security, a major, commented that he should not be coming into Wallen's Ridge. Although Allen asserted that it was supposed to be a temporary 3-

3

day stay, he alleged that Good cancelled his return to Sussex and overrode his level 4 classification to keep him at Wallen's Ridge. Allen allegedly begged Cook to keep him separate not only from Nixon, but from other participants in the 2023 assault and 2024 near-assault and from all gang members. Church advised Allen that if he wanted more "keep separate" notices for inmates other than Nixon, he would have to provide names to Intel for approval, but she was not waiting for their decision before assigning him a new cellmate, again telling him he did not get to choose with whom or where he was housed.

On February 19, 2026, when he was returned to general population, he was assigned another Bloods gang member as a cellmate. The man got a shank and refused to let Allen into the cell, and he was returned to RHU under a "fears for his safety" designation. This suit followed.

Allen seeks compensatory and punitive damages in his Complaint, along with an injunction requiring defendant Duke to remove the gang member classification from his record. In his motion for temporary restraining order, he seeks to restrain defendants, Wallen's Ridge, and VDOC from housing him in the same cell with a gang member of member of a security threat group. In his motion for preliminary injunction, he seeks a transfer to a different VDOC facility.

**Legal Standard**

Under 28 U.S.C. § 1915(g), an inmate with three prior suits that have been dismissed for failure to state a claim or for being frivolous or malicious must prepay the filing for any subsequent suits he files. This is referred to as the "three strikes" rule. The statute creates a narrow exception if the prisoner alleges facts showing that he is "under imminent danger of serious physical injury." *Id.* The imminent danger exception to the three strikes rule must be

4

construed narrowly and applied only for genuine emergencies, where time is pressing and a threat is real and proximate with the potential consequence of a serious physical injury. *Locklear v. Moyer*, No. PWG-17-3829, 2018 WL 3880271, at *4 (D. Md. Aug. 14, 2018) (citing *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002).

**Discussion**

A prisoner's allegation that he suffered imminent danger in the past is not sufficient to show the likelihood of imminent danger of serious physical injury in the future. *Medberry v. Butler*, 185 F.3d 1189, 1193 (11th Cir. 1999). The attack on Allen at Sussex occurred in 2023, more than two and a half years ago and in a different prison from where he is currently housed. The attack allegedly prevented by other inmates at Wallen's Ridge in 2024 was nearly two years ago. Plaintiff's concern that this "personal issue" with gang members (Compl. at ¶ 13) will continue indefinitely and that any Blood-affiliated gang member will physically harm him is speculation, not evidence of an imminent injury. "Imminent" means immediately, dangerously close, or about to take place. *Meyers v. Comm'r of Soc. Sec. Admin.*, 801 F. App'x 90, 95 (4th Cir. 2020). The imminent danger of serious physical injury must exist at the time the complaint is filed and cannot be based on whether the inmate deserves a remedy for past misconduct. *Id.* at 96.

Other courts faced with allegations similar to Allen's have held that the imminent danger exception was not satisfied. *See Lindell v. Houser*, 442 F.3d 1033, 1035 (7th Cir. 2006) (finding no reason for officer to believe plaintiff was at serious risk of harm when placed with a Gangster Disciples cellmate, even though he knew plaintiff had been involved in an altercation with another Gangster Disciple 18 months earlier); *Blanchard v. Gallick*, 448 Fed. App'x 173, 176 (3d Cir. 2011) (finding that plaintiff failed to show substantial risk of serious harm by assignment of

a Crips cellmate 4 months after plaintiff had been assaulted by another Crips cellmate); *Feather-Gorbey v. King*, No. 3:21-cv-16, 2021 WL 1792096, at *2 (M.D. Pa. May 5, 2021) (holding that plaintiff's assertion of past assaults does not suggest imminent harm, and his assertion of being at risk of further assaults was speculative, such that imminent danger exception was not satisfied).

The other reason that Allen fails to meet the imminent danger exception is that, according to his Complaint, he was placed back in the RHU on February 19, 2026, and he mailed his Complaint four days later. He alleges no further placement after the RHU. Once in the RHU, any risk that might have existed is no longer imminent. *See Locklear*, 2018 WL 3880271, at *2 (finding no likelihood of irreparable harm when defendants assigned plaintiff a new cellmate).

### Conclusion

Because Allen has failed to allege facts sufficient to establish imminent danger of serious physical injury, I will dismiss this suit without prejudice under 28 U.S.C. § 1915(g) and the motions for injunction and temporary restraining order as moot. An appropriate order will be entered this day.

Enter:  April 21, 2026

/s/ Robert S. Ballou

Robert S. Ballou
United States District Judge